UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| CONOCOPHILLIPS COMPANY, | § | |
| | § | |
| Appellant, | § | |
| VS. | § | CIVIL ACTION NO. C-10-285 |
| | § | |
| JOHN AND MARILYN DAHLBERG, *et* | § | |
| *al*, | § | |
| | § | |
| Appellees. | | |

## ORDER

On this day came on to be considered Appellant ConocoPhillips Company's appeal from a final order of the United States Bankruptcy Court for the Southern District of Texas.  (Case No. 2:10-cv-285; Bankr. Adv. Proc. 06-20804).  For the reasons stated herein, the Bankruptcy Court's Memorandum Opinion and Order Granting Motion for Summary Judgment Relating to Docket # 3966 is AFFIRMED. (D.E. 3-95; Bank. D.E. 4197.)

### I.    Jurisdiction

This Court has appellate jurisdiction over this action pursuant to 28 U.S.C. § 158(a)(1), which states that "[t]he district courts of the United States shall have jurisdiction to hear appeals … from final judgments, orders, and decrees."

### II.    Factual and Procedural Background

The following factual background is largely undisputed, and is derived primarily from the parties' submissions and the Bankruptcy Court's Memorandum Opinion and Order Granting Motion for Summary Judgment Relating to Docket # 3966. (D.E. 3-95.)

Debtor Reichmann Petroleum Corp. ("Reichmann") is the Lessee of an Oil and Gas Lease dated January 15, 2005, and an Unrecorded Top Lease Agreement dated June 28, 2005 (the "Villarreal Lease").  The Lessor is the Villarreal Family Land and Mineral Co., Ltd., LLP, the Estates of Gustavo and Blanca Villarreal, and Gustavo Villarreal, Jr. (D.E. 3-90.)  On July 11, 2005, Reichmann sent Appellee John Dahlberg a Participation Letter ("Participation Letter"), offering a 3.125 % Working Interest in the Villarreal Lease, which the Dahlbergs elected to purchase, and paid Reichmann $82,865 on July 15, 2005 (the "Disputed Villarreal Interest").  (D.E. 3-71 at 5-8.)  The working interests, however, were not formally assigned at that time.

On July 27, 2005, Reichmann and Appellant ConocoPhillips Company ("Conoco") entered into an agreement under which Conoco would be assigned an undivided 65.625% interest in the Villarreal Lease.  At that time, Conoco and Reichmann also entered into a Joint Operating Agreement ("JOA"), effective July 21, 2005,[1] which included a "Preferential Right of Purchase Provision."  This provision gave parties under the JOA a right of first refusal when a party desired to sell its interest under the agreement.  The Preferential Right of Purchase Provision provided in relevant part:

> Should any party desire to sell all or any part of its interests under this agreement, or its rights and interests in the Contract Area, it shall promptly give written notice to other parties, with full information concerning its proposed disposition, which shall include the name and address of the prospective transferee (who must be ready, willing, and able to purchase), the purchase price, a legal description sufficient to identify the property, and all other terms of the offer . . . .  However, there shall be no preferential right to purchase in those cases where any party wishes to mortgage its interests . . . or to dispose of its interests by merger, reorganization, consolidation, or by sale of all or substantially all of its Oil and Gas assets to any party . . . . (D.E. 3-266 at 18.)[2]

---

[1] Reichmann executed the JOA on July 27, 2005, and Conoco executed the JOA on July 31, 2005.

[2] A "preferential right, also known as a right of first refusal or preemptive right, is a right granted to a party giving him or her the first opportunity to purchase property if the owner decides to sell it. . . .  [W]hen the

Reichmann filed for Chapter 11 Bankruptcy on December 8, 2006, and filed their Chapter 11 Plan of Reorganization on June 27, 2007.  (D.E. 3-110.)

On February 5, 2008, the Bankruptcy Court entered an "Assumption Order," under which the Court ordered assumption of the JOA with respect to the entire Villarreal Lease pursuant to Section 365 of the Bankruptcy Code, 11 U.S.C. § 365.   The Assumption Order also provided that if the parties could not agree as to cure amounts owed by Debtor to Conoco under the JOA, or the application of Preferential Rights Provision in the JOA, they were to contact the court to request a hearing.  (D.E. 3-21.)

In July 2008, Conoco filed a Motion for Allowance and Payment of Administrative Claim and to Determine Default on Assumed Executory Contract (the "Motion to Allow"), in which it claims that "pre-petition and pursuant to the Plan, the Debtor purports to assign interests to unassigned working interest owners in violation of the preferential rights provision" of the JOA.   Conoco argued that Reichmann had to cure any breaches of the JOA after it was assumed, and that Reichmann's transfer of interests in the Villarreal Lease to the Dahlbergs was a breach of the Preferential Right of Purchase Provision.  (D.E. 3-44.)  Conoco also requested "an order be entered compelling the Debtor to transfer the interests identified below [including the Dahlbergs' interest] to Concoco, at a price [to be determined]."   (D.E. 3-44 at 6.)  The Dahlbergs objected, claiming that the Disputed Villarreal Interests were not subject to the Preferential Right to Purchase Provision of the JOA, as the purchase occurred before the effective date of

---

property owner gives notice of his intent to sell, the preferential right matures or 'ripens' into an enforceable option."  FWT, Inc. v. Haskin Wallace Mason Property Management, L.L.P., 301 S.W.3d 787, 793 (Tex. App.-Fort Worth, 2009).  Because a right of first refusal or preferential right is a restraint on alienation, its terms in a contract are strictly construed.  See Hicks v. Castille, 313 S.W.3d 874, 883 (Tex. App. – Amarillo 2010); Tenneco Inc. v. Enterprise Products Co., 925 S.W.2d 640, 646 (Tex. 1996) ("[C]ourts narrowly construe rights of first refusal. . . .").

the JOA.  This led to the present dispute.  The Bankruptcy Court entered a bifurcation order, under which the Court would first address whether the Preferential Right to Purchase Provision in the JOA is factually and legally applicable.  (Bank. D.E. 2587.)

Also pending at this time was a dispute between the Dahlbergs and Reichmann regarding formal assignment of the working interests that the Dahlbergs claimed they had purchased in July 2005.  Previously, on July 16, 2007, the Dahlbergs had filed an adversary proceeding, styled John and Marilyn Dahlberg, et al v. Reichmann Petroleum Corp., et al., No. 07-2045, seeking an assignment of those working interests from Reichmann.   Then, in January 2009, the Dahlbergs, Reichmann, and the bankruptcy trustee entered into a Settlement Agreement of the adversary matter with respect to the unassigned working interests, under which Reichmann would assign to the Dahlbergs 90% of the Disputed Villarreal Interests, and would retain the remaining 10%, thus giving the Dahlbergs a 2.8125% interest (ninety percent of 3.125 %).  Conoco objected, arguing that the Preferential Right provision was applicable, and it should thus have the option to purchase the interest.  Thereafter, the Bankruptcy Court held a hearing and on March 2, 2009, adopted the Settlement Agreement, but made it subject to Conoco's objections.  The Settlement Agreement also provided that the Debtor would not execute an assignment to the Dahlbergs for the Disputed Villarreal Interests unless or until the Bankruptcy Court determined whether Conoco had a preferential right to purchase those Interests under the JOA.  (D.E. 3-75.)

Thereafter, Conoco filed a motion for summary judgment seeking a ruling that the Disputed Villarreal Interests were subject to the JOA, and pursuant to the Preferential Right of Purchase Provision, Conoco must be given an opportunity to purchase the

Disputed Villarreal Interests before they are assigned to the Dahlbergs.  (D.E. 3-78.)  The Dahlbergs also filed a Motion for Summary Judgment.  (D.E. 3-69.)  In essence, Conoco argued that because the sale did not occur until the Settlement Agreement and assignment in January 2009, it is subject to the Preferential Right of Purchase Provision.  Conversely, the Dahlbergs argued that the sale took place between July 11 and July 16, 2005, prior to the effective date of the JOA, and thus was not subject to its provisions.

The Bankruptcy Court issued its ruling on December 1, 2009, in favor of the Dahlbergs.  It made the following findings: (1) Reichmann's 2005 sale of the working interests in the Villarreal Property to the Dahlbergs was not a pre-petition breach of the JOA because it was undisputed that Reichmann did not have a contractual relationship with Conoco and the JOA was not in effect until July 21, 2005, after the transactions between Reichmann and the Dahlbergs; (2) Reichmann's 2009 agreement to give the Dahlbergs written assignments for their previously purchased working interests (in 2005), pursuant to the Settlement Agreement, was not a "sale" of Reichmann's interests; and (3) even if the 2009 agreement were a sale the Preferential Right provision of the JOA would not be applicable because the sale of Debtor's assets is part of the overall sale of Reichmann's assets, the Dahlbergs elected under the Plan to litigate their entitlement to the assignments, and the Plan contemplated that the Debtor would be closing down its business.  (D.E. 3-95.)

Conoco timely appealed.  (D.E. 1.)  Conoco filed its brief in this Court on October 19, 2010 (D.E. 4), the Dahlbergs responded on November 8, 2010 (D.E. 8), and Conoco filed a reply on November 22, 2010 (D.E. 9).  The Court held oral arguments on February 17, 2010.

### III.     Issues on Appeal

The central issue on appeal is whether the Bankruptcy Court erred in deciding that the contractual Preferential Right of Purchase Provision in the Joint Operating Agreement did not apply to the sale of the 3.125 % working interest in the Villarreal Lease from Reichmann to the Dahlbergs.  Appellant divides this issue into five subparts on appeal:

1) Whether the Bankruptcy Court erred when it concluded that the Participation Letter satisfied all conveyance requirements pertaining to real property and constituted a "sale" of the subject working interest.

2) Whether the Bankruptcy Court erred when it concluded that the Participation Letter, which lacked a property description, words of conveyance, and was not publicly recorded, satisfied the statute of frauds.

3) Whether the Bankruptcy Court erred when it concluded that the offer set forth in the Participation Letter contained sufficient consideration to both parties to be enforceable.

4) Whether the Bankruptcy Court erred when it concluded that the preferential rights provision of the Joint Operating Agreement did not apply to the Assignment, because the Assignment was part of a sale of substantially all of the Debtor's oil and gas assets.

5) Whether the Bankruptcy Court erred when it concluded that the assignment of a portion of the Debtor's working interest in the Villarreal Lease was not subject to the existing JOA.  (D.E. 4 at 7.)

## IV.     Discussion

### A.     Standard of Review

On appeal, a bankruptcy court's "conclusions of law and mixed law and fact questions are reviewed de novo, while findings of fact are reviewed for clear error." In re McCain, 516 F.3d 301, 307 (5th Cir. 2008); In re Stonebridge Technologies, Inc., 430 F.3d 260, 265 (5th Cir. 2005).  Further, Federal Rule of Bankruptcy Procedure 8013 provides, "[o]n an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."

This court "reviews the grant of summary judgment de novo, applying the same standards as the bankruptcy court." In re Paige, 610 F.3d 865, 870 (5th Cir. 2010); In re Biloxi Casino Belle, Inc., 368 F.3d 491, 496 (5th Cir. 2004).  As one court as explained, "[a] district court review of the Bankruptcy Court's decision to grant summary judgment is a de novo consideration.  However, the rules governing the granting of a summary judgment remain the same." Jones v. NCNB Texas, N.A., 143 B.R. 687, 689 (S.D. Tex. 1991).  Thus, "[a]ll fact questions are viewed in the light most favorable to the non-movant." Matter of Southmark Corp., 88 F.3d 311, 314 (5th Cir. 1996).   The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

**B.      Issues 1, 2, and 3: Whether the Bankruptcy Court erred when it concluded that the Participation Letter satisfied all conveyance requirements pertaining to real property and constituted a "sale" of the subject working interest.**

Appellant raises several arguments as to why the Participation Letter does not constitute a "sale," namely that it does not satisfy the property description requirement under Texas law, lacks sufficient words of conveyance, lacks consideration, and was never recorded.

As an initial matter, Appellee argues that Appellant lacks standing to raise the statute of frauds issue.  (D.E. 8 at 18-20.)  It is well established under Texas law that non-parties to a contract lack standing to assert the statute of frauds as a defense to a contract's enforcement.  Madera Production Co. v. Atlantic Richfield Co., 107 S.W.3d 652, 662-663 (Tex. App. – Texarkana 2003) ("[A]s a stranger to the [contract], Madera would not have standing to challenge the agreement on the statute of frauds ground.").  In its Reply, Appellant relies heavily upon Moore Burger, Inc. v. Phillips Petroleum Co., 492 S.W.2d 934, 939 (Tex. 1973) to assert its standing.  (D.E. 9 at 7.)  In Moore, the court explained, "[a]lthough it is the general rule that a stranger to a contract cannot invoke the statute of frauds, the plaintiff in this case seeks to enforce its contract against [defendant] Phillips, and Phillips' position is similar to that of a purchaser of land whose grantor has previously made a contract to sell to another. In a suit by that other, the courts uniformly hold that the purchaser may assert the defenses which his grantor had."  Id. at 938-39 (citations omitted); see also Sasser v. Dantex Oil & Gas, Inc., 906 S.W.2d 599, 605 (Tex. App. – San Antonio 1995) (citing Moore).  Unlike in Moore, however, Conoco is not in the position of a "purchaser of land whose grantor had previously made a contract to sell to another," and rather is only attempting to purchase the working interest

held by the Dahlbergs.  Conoco is essentially a "stranger" to the contract between the Dahlbergs and Reichmann, unable to assert the statute of frauds defense.  <u>Madera Production Co.</u>, 107 S.W.3d at 662-663.  For this reason alone, Appellant's argument fails.

Nevertheless, even if Conoco were able to assert the statute of frauds argument, this would not succeed in invalidating the transaction between Reichmann and the Dahlbergs.  The Court considers each of Appellant's objections in turn.

### 1. Property Description Requirement

Appellant contends that the Participation Letter cannot be a legal transfer of an oil and gas interest because it did not satisfy the statute of frauds property description requirement. (D.E. 4 at 19-21.)   Appellee contends that the property description is adequate.  (D.E. 8 at 18-20.)

In Texas, the statute of frauds applies to "a contract for the sale of real estate." Tex. Bus. & Comm. Code § 26.01(b), and "[o]il and gas interests are real property interests." <u>Retamco Operating, Inc. v. Republic Drilling Co.</u>, 278 S.W.3d 333, 339 (Tex. 2009).  Under the statute, "[a] promise or agreement . . . is not enforceable unless the promise or agreement, or a memorandum of it, is (1) in writing; and (2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him."  Tex. Bus. & Comm. Code § 26.01(a).  "In order for a conveyance or contract of sale to meet the requirements of the statute of frauds, **the property description must furnish within itself or by reference to another existing writing the means or data to identify the particular land with reasonable certainty**. The purpose of a description in a written conveyance is not to identify the land, but to afford a means

of identification. The legal description in the conveyance must not only furnish enough information to locate the general area as in identifying it by tract survey and county, it need contain information regarding the size, shape, and boundaries. If enough appears in the description so that a person familiar with the area can locate the premises with reasonable certainty, it is sufficient to satisfy the statute of frauds." Reiland v. Patrick Thomas Properties, Inc., 213 S.W.3d 431, 437 (Tex. App. – Houston [1st Dist.] 2006) (emphasis added). "If a conveyance of an interest in real property does not sufficiently describe the land to be conveyed, it is void under the statute of frauds." Id.

Here, the July 11, 2005 letter from Reichmann to the Dahlbergs provides little in the way of description. It describes the Villarreal Lease location as being between "our Resendez Lease" and the "La Duquesa." An attached "Authorization for Expenditure" states that the county is "Zapata," and describes it as a "710 Acre Lease." (D.E. 3-71 at 5-6.) The description in the Participation Letter is insufficient on its own to satisfy the written description requirement, as it does not contain "tract survey" information, or information as to "shape and boundaries." However, the Participation Letter refers several times to "Villarreal #1," and this can be understood to mean the Villarreal Oil and Gas Lease (a separate document), which has more than a sufficient property description. The description in the lease states: "The Northeast 1099.165 acres of land out of a 2323.76 acre tract, commonly known as Las Avispas Ranch Tract, and more particularly described in two tracts of 549.89 acres each," and sets out very specific descriptions of each tract. (D.E. 3-90 at 3-4.) The Statute of Frauds requires only that "property description must furnish within itself or **by reference to another existing writing** the means or data to identify the particular land with reasonable certainty." Reiland, 213

S.W.3d at 437 (emphasis added).  The "Oil and Gas Lease" was in existence at the time, and the Participation Letter's references to "Villarreal #1" and the "Villarreal" prospect are adequate to reference the "Oil and Gas Lease," which contains a sufficient property description under the law.  See Teledyne Isotopes, Inc. v. Bravenec, 640 S.W.2d 387, 389-90 (Tex. App. – Houston [1st Dist.] 1982) ("The sufficiency of the description of property must be determined from the instrument itself or by reference to some other existing writing.").  Although perhaps not a model conveyance under the statute of frauds, the Court must be mindful of its duty "in construing a conveyance to give effect to the intent of the parties as manifested by the terms of the instrument, and a deed should not be declared void for uncertainty if it is possible, by any reasonable rules of construction, to ascertain from the description, aided by extrinsic evidence, what property the parties intended to convey."  Id. at 389.

Finally, while Appellant places much emphasis on the fact that Mr. Dahlberg, a California resident unfamiliar with South Texas, did not know the location of the property, this certainly does not mean that the property description was inadequate.  The question is whether "a person familiar with the area can locate the premises with reasonable certainty."  Whether Mr. Dahlberg can do so or not is irrelevant.

### 2.    Words of Conveyance

Appellant argues that the Participation Letter has insufficient words of conveyance under Texas law, such as "give," "convey," "grant," or the like.  (D.E. 4 at 21-22.)  Appellees contend that Texas law requires no particular words of conveyance, and those present in the Participation Letter are sufficient.  (D.E. 8 at 21-22.)

As one court has explained, "[b]y statute [the Texas Statute of Conveyances, Texas Property Code § 5.021], a deed must be in writing and must be subscribed or delivered by the conveyor or the conveyor's agent.  For a deed or instrument to effect conveyance of real property, it is not necessary to have all the formal parts of a deed formerly recognized at common law or **to contain technical words**.  If, from the **whole instrument**, a grantor and grantee can be ascertained, **if there are operative words or words of grant showing an intention of the grantor to convey title to a real property interest to the grantee**, and if the instrument is signed and acknowledged by the grantor, it is a deed that is legally effective as a conveyance."  <u>Masgas v. Anderson</u>, 310 S.W.3d 567, 570 (Tex. App. – Eastland 2010) (emphasis added); <u>Roemer v. Roemer</u>, 2001 WL 459733, at *4 (Tex. App. – Austin 2001) ("In order for a deed to accomplish a legally effective conveyance . . . there must be words of grant showing an intention by the grantor to convey title to a real property interest to the grantee."); Tex. Prop. Code § 5.001 ("[W]ords previously necessary at common law to transfer a fee simple estate are not necessary.").  Texas courts have recognized that "[n]o particular form is required in this state to convey title to land."  <u>Young v. Rudd</u>, 226 S.W.2d 469, 472 (Tex. Civ. App.- Texarkana 1950).  Moreover, "[t]he use of any words which amount to a present contract of bargain and sale is all-sufficient. Whatever may be the inaccuracy of expression or the inaptness of the words used in an instrument, in a legal view, **if the intention to pass the title can be discovered, the courts will give effect to it, and construe the words accordingly**."  <u>Id.</u> (citing <u>Harlow v. Hudgins</u>, 19 S.W. 364, 365 (Tex. 1895)) (emphasis added).

Here, the only words that could satisfy the "intent to convey" requirement state: "[a]s a right of first refusal to companies and people like yourself who have helped get us so active in this area you have the **election within 15 days to participate in the lease and prospect**.  Please execute this letter and attached [Authorization for Expenditure] and return with a check made payable to Reichmann Petroleum Corp. in the amount of $82,865 if you are **electing to participate** in this lease and first well."  (D.E. 4622-2 (emphasis added).)      As the law only requires "words of grant showing an intention of the grantor to convey title to a real property interest to the grantee," and no specific words or phrases, those present in the July 11, 2005 Participation Letter are sufficient. The Participation Letter sufficiently demonstrates Reichmann's intent to convey an interest in the Villarreal Lease to the Dahlbergs, and this understanding was confirmed when the Dahlbergs responded with a check.    Moreover, as reflected in the 2009 Settlement Agreement, both parties understood that the 2005 transaction constituted a sale.  The parties explicitly agreed that "[e]ach of the Plaintiffs' [including the Dahlbergs] respective Working Interests **were purchased and ownership transferred** at the time the Plaintiffs made the **initial funding** on account of such Working Interest."  (D.E. 3-75 at 12 (emphasis added).)

While words such as "grant" or "sell" may have more clearly expressed the parties' intent, the statements here are not so insufficient as to invalidate the parties' agreement.  ConocoPhillips has offered no authority for its statement that "participate" is insufficient to demonstrate an intent to convey.  See Young, 226 S.W.2d at 472 ("[I]f the intention to pass the title can be discovered, the courts will give effect to it, and construe the words accordingly.").

### 3.    Lack of Consideration

Appellant contends that the "sale" to the Dahlbergs is insufficient because it is not supported by adequate consideration.  Appellant argues that there was no consideration to support the transfer of the working interest, because the Dahlbergs only agreed to pay participation and completion costs for each Villarreal well they elected to participate in and complete.  They paid nothing beyond these amounts, and thus nothing for the actual assignment of a working interest.  (D.E. 4 at 22-24.)  Appellee disagrees.  (D.E. 8 at 22-23.)

Upon reviewing the record, the Court concludes that the undisputed evidence clearly demonstrates that the Dahlbergs paid Reichmann $82,865 to participate in the Villarreal Lease.  A check from the Dahlbergs to Reichmann for that amount, for "Villarreal #1," is in the record.  (D.E. 3966-2 at 7.)  While Appellant contends that these payments were only for the participation and completion costs for each Villarreal Well in which they elected to participate in and complete, this is not supported by the evidence.  The Authorization for Expenditures specifies an amount of $33,302 for the "lease and geophysical costs" of the interest, separate from the "drilling and testing cost," or the "completion cost."  Moreover, "[a] basic principle of contract law is that one consideration will support multiple promises by the other contracting party."  Fortner v. Fannin Bank of Windom, 634 S.W.2d 74, 77 (Tex. App. – Austin 1982).  Thus, even if the Dahlberg's July 16, 2005 payment covered only certain aspects of the working interest, this does not mean that the transaction was not supported by consideration.  Appellant's argument must be rejected.

### 4.  Recording

Appellant contends that even if the 2005 sale were valid, is void as to Conoco because it was never recorded, consistent with Section 13.001 of the Texas Property Code.   (D.E. 4 at 24-25.)   Appellee responds that Conoco's argument must be rejected because the recording statute applies only to lien creditors, and does not extend to common or general creditors.  Section 13.001 of the Property Code would apply only if Conoco could prove that it had a lien against the Dahlbergs' working interest, which it does not.  Merely being a Reichmann creditor does not give Conoco the ability to enforce this statute, Appellee argues.  (D.E. 8 at 23-24.)

Under Texas Property Code § 13.001, "[a] conveyance of real property or an interest in real property or a mortgage or deed of trust is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice unless the instrument has been acknowledged, sworn to, or proved and filed for record as required by law." Tex. Prop. Code § 13.001; see Hue Nguyen v. Chapa, 305 S.W.3d 316, 323 (Tex. App. – Houston [14th Dist.] 2009) ("Under Texas law, an unrecorded conveyance of an interest in real property is void as to a subsequent purchaser who purchases the property for valuable consideration and without notice.").   There is no dispute in this case that the transaction based on the July 11, 2005 Participation Agreement was not recorded.  The question is whether the "creditor" provision of Section 13.001 is applicable, and thus would make the conveyance void as to Conoco for failure to record.  The term "creditor" in the context of Section 13.001 means "specifically creditors who have acquired liens without notice of the competing deed."   Omohundro v. Jackson, 36 S.W.3d 677, 682 (Tex. App. – El Paso 2001).   Conoco argues that it fits this description, as it has "lien

rights in the property pursuant to the JOA," (D.E. 9 at 10) which provides: "[e]ach party grants to the other parties hereto a lien upon any interest it now owns or hereafter acquires in Oil and Gas Leases and Oil and Gas Interests in the Contract Area . . . to secure performance of all of its obligations under this agreement including but not limited to payment of expense, interest and fees, the proper disbursement of all monies paid hereunder, the assignment or relinquishment of interests in Oil and Gas Leases as required hereunder, and the proper performance of operations hereunder.  Such lien and security interest granted by each party hereto shall include such party's leasehold interests [and] working interests."  (D.E. 3-266 § VII(B)).  Conoco further contended at oral argument that Reichmann represented at the signing of the JOA that it had 100 % ownership of the Villarreal Lease, and did not disclose its prior transaction with the Dahlbergs.

Regardless of what may have occurred between Reichmann and Conoco at the time that the JOA was signed, the fact remains that Conoco cannot claim a lien with respect to working interests sold prior to the effective date of the JOA.  Because the Dahlberg's interests were acquired before the JOA became effective, Conoco does not have a lien with respect to the Dahlberg's interests.  In other words, Conoco cannot use the post-sale JOA to create a lien interest over property that was sold pre-JOA, and thus is not subject to its terms.  To do so would essentially require this Court to accept Conoco's argument that the pre-JOA transaction between Reichmann and the Dahlbergs did not constitute a sale; for reasons stated above, the Court declines to do so.  Thus, the failure to satisfy the terms of the recording statute with respect to the Dahlbergs' working interest does not invalidate the July 2005 sale as to Conoco.

>    5.      Summary

In sum, the Court concludes that the Bankruptcy Court did not err in concluding that the July 11, 2005 Participation Letter constitutes a valid sale of the 3.125 % working interest to the Dahlbergs.  As this sale preceded the July 21, 2005 JOA, it is not subject to the Preferential Right of Purchase Provision.[3]

>    C.      **Issues 4 and 5: Whether the Bankruptcy Court erred when it concluded that the "substantially all" exception to the Preferential Right of Purchase Provision was applicable, and whether the Bankruptcy Court erred when it concluded that the working interest in the Villarreal Lease assigned to the Dahlbergs was not subject to the JOA**

The Bankruptcy Court held in the alternative that even if it were to adopt Conoco's position as to the applicability of the JOA, "the preferential rights provision is still not applicable because the 'sale' of the Debtor's assets is part of the overall sale of 'substantially all of [the Debtor's] Oil and Gas assets' as stated in the Villarreal Joint Operating Agreement."  (D.E. 3-95 at 4.)  Appellant objects to the applicability of this exception.  (D.E. 4 at 25-26.)  Because this Court has concluded that the Bankruptcy Court did not err in deciding that the sale to the Dahlbergs occurred prior to the effective date of the JOA in 2005, it need not consider the Bankruptcy Court's alternative holding as to the "substantially all" provision.

Finally, Appellant contends that the assignment of the 2.8125 % working interests to the Dahlbergs under the January 2009 Settlement Agreement constituted a sale, and thus was subject to the Preferential Right of Purchase provision under the JOA.

---

[3] Appellant also argues that the Bankruptcy Court erred in granting the Dahlbergs' Summary Judgment Motion because the facts must be taken in the light most favorable to Conoco, the non-moving party. Doing so, Appellant argues, would necessarily require the Dahlbergs' Summary Judgment Motion to fail. (D.E. 4 at 30.)  The Court, however, finds that no disputed issues of fact are relevant here.  The parties agree as to many of the relevant facts and the terms of central documents, such as the Preferential Right of Purchase Provision, the Participation Letter, the Settlement Agreement, and the like, are not subject to dispute.  The Bankruptcy Court did not err in granting summary judgment.

Appellants argue that the Dahlbergs are subject to the JOA, even though they are not actually signatories.  (D.E. 4 at 26-29.)  Appellees contend that they are not subject to the JOA, as they were not parties to it.  (D.E. 8 at 26-28.)

Once again, the Court need not decide whether the Dahlbergs are subject to the JOA to resolve this appeal.  Appellant's argument that the 2.8125 % interest assigned to the Dahlbergs under the 2009 Settlement Agreement is subject to the JOA and the Preferential Right of Purchase Provision must be considered only if the July 2005 transaction was not a "sale."  For the reasons discussed above, the July 2005 transaction did in fact constitute the "sale," and because it was completed before the JOA became effective, it cannot be subject to the Preferential Right of Purchase Provision.[4]

For these reasons, the Court affirms the Bankruptcy Court's finding that the working interest sale to the Dahlbergs is not subject to the Preferential Right of Purchase Provision in the Joint Operating Agreement, because the sale occurred prior to the July 21, 2005 effective date of the Joint Operating Agreement.

## V.    Conclusion

For the reasons stated above, the Court AFFIRMS the Bankruptcy Court's Memorandum Opinion and Order Granting Motion for Summary Judgment Relating to Docket # 3966, entered December 1, 2009.  (D.E. 3-95; Bank. D.E. 4197.)

SIGNED and ORDERED this 22nd day of February, 2011.

_____
Janis Graham Jack
United States District Judge

---

[4] The Court thus need not address questions such as whether Reichmann was acting as the Dahlbergs' trustee when it entered into the JOA, or otherwise acting on their behalf.  (See D.E. 4 at 27-28.)